FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2015 DEC 21 AM 10: 37

CLERK
SO. DIST. OF GA.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

MICHAEL LAVON BOSTIC,       )
                            )
    Plaintiff,              )
                            )
v.                          )   Case No. CV415-117
                            )
THE CHATHAM COUNTY JAIL,    )
                            )
    Defendant.              )

## REPORT AND RECOMMENDATION

Proceeding *pro se*, Michael Lavon Bostic has filed a 42 U.S.C. § 1983 complaint against the Chatham County, Georgia Jail for defaming him and failing to prevent rumors that caused other inmates to try to extort him. Doc. 1 at 2-4. He seeks $2.5 million. *Id.* at 4. Upon preliminary review,[1] his complaint must be **DISMISSED** because he failed to exhaust available administrative remedies.

---

[1] Bostic proceeds *in forma pauperis* (docs. 3, 4 & 5), so the Court is screening his case under 28 U.S.C. § 1915(e)(2)(B)(ii) to determine whether he has stated a plausible claim for relief. *See also* 28 U.S.C. § 1915A (courts must identify "cognizable claims" filed by prisoners or other detainees and dismiss claims which are frivolous, malicious, fail to state a claim for relief, or seek monetary relief from a defendant immune from such relief); 42 U.S.C. § 1997e(c)(2) (allowing dismissal on the same four standards provided by § 1915A as to any prisoner suit brought "with respect to prison conditions"). *Pro se* complaints are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Under the Prison Litigation Reform Act ("PLRA"), a prisoner must exhaust all available administrative remedies before filing an action that challenges the conditions of his confinement. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail . . . until such administrative remedies as are available are exhausted."). It is a "pre-condition to suit" that must be enforced even if the available administrative remedies are either "futile or inadequate." *Harris v. Garner*, 190 F.3d 1279, 1285–86 (11th Cir. 1999); *see also Jones v. Bock*, 549 U.S. 199, 199-200 (2007) ("There is no question that exhaustion is mandatory under the PLRA."); *Goebert v. Lee Cty.*, 510 F.3d 1312, 1322 (11th Cir. 2007) (it "seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case") (quotes, alteration and cite omitted).

Georgia has a prison grievance procedure available to inmates. *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1208 (11th Cir. 2015) ("Georgia's prison grievance procedures are set out in a standard operating procedure. *See Turner v. Burnside*, 541 F.3d 1077, 1080–81 (11th Cir.2008) (describing the relevant SOP)"); *Johnson v. Meadows*,

418 F.3d 1152, 1159 (11th Cir. 2005) ("[W]hen a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit.") (quotes and cite omitted). Georgia "prisoners are required to complete a three (3) step grievance process, consisting of an informal grievance, a formal grievance, and an appeal, before filing suit in federal court." *Helton v. Burks*, 2012 WL 6097036 at * 2 (M.D. Ga. May 4, 2012) (citing GA. DEP'T OF CORR. SOP IIB05–001 § VI); *accord*, *Whatley*, 802 F.3d at 1208.[2]

Finally, not only does the PLRA require exhaustion, it "requires proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), which means an inmate must "us[e] all steps" in the administrative process, and comply with any administrative "deadlines and other critical procedural rules," *before* filing a complaint about prison conditions in federal court. *Id.* at 89-91 (citation omitted). Thus, if an inmate has filed an "untimely or otherwise procedurally defective administrative

---

[2] Inmates must be reasonably assiduous in pursuing exhaustion. *Whatley*, 802 F.3d at 1215 ("the benefits of the exhaustion requirement are fully realized when an inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits, even if the decision-maker could have declined to reach the merits because of one or more procedural deficiencies.") (quotes and cite omitted).

grievance or appeal," he has not properly exhausted his administrative remedies. *Id.* at 83-84; *see also Lambert v. United States*, 198 F. App'x 835, 840 (11th Cir. 2006) (proper exhaustion requires filing grievance "under the terms of and according to the time set by" prison officials).[3] And if a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. *Johnson*, 418 F.3d at 1159; *see also Whatley*, 802 F.3d at 1216-17 (concurrence noting importation of habeas corpus procedural default doctrine into this area of law).

Bostic admits in his own Complaint that "a grievance procedure is in [his] institution," doc. 1 at 1, yet he never invoked it. His excuse? "This was not a jail house issue." *Id.* at 2. Of course it was. Indeed, he

---

[3] No "add-on" claims are permitted. *See Johnson v. Johnson*, 385 F.3d 503, 521 n. 13 (5th Cir. 2004) ("We pause to observe that we do not here hold that a grievance filed in response to one particular incident automatically exhausts claims that arise from future incidents of the same general type."); *see also Pinson v. St. John*, 2013 WL 765639 at * 1 (N.D. Ala. Feb. 25, 2013) ("Since one of the purposes of the grievance process is to place the prison administration on notice of the problem and to give the administration the opportunity to resolve the issue without the need for litigation, it is axiomatic that the plaintiff cannot now claim exhaustion by referring to a grievance process that occurred at a wholly different location and involved individuals other than those named as defendants in the complaint herein."), quoted in *Diamond v. Owens*, ___ F. Supp. 3d ___, 2015 WL 5341015 at * 9 (M.D. Ga. Sept. 14, 2015).

sues *the jail*[4] about the way things were run there (*i.e.*, mismanaging the manner in which it housed him, which led others to believe he was wealthy enough to be extorted). Doc. 1 at 3-4. "[T]he PLRA's exhaustion requirement," it must be remembered, "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Davis v. West*, 2015 WL 7577065 at * 2 (M.D. Ala. Oct. 19, 2015); *see also id.* (an "inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement"). Other harassed inmates were required to exhaust.[5] So must Bostic.

---

[4] For that matter, the jail lacks the legal capacity to be sued, so his Complaint must be dismissed on these grounds alone. *Logue, Jr. v. Chatham Cty. Detention Ctr.*, 2010 WL 5769485 at *3 (S.D. Ga. Dec. 29, 2010); *see also Walton v. Garland Cty. Detention Ctr.*, 2015 WL 1401728 at * 2 (W.D. Ark. Mar. 26, 2015) ("The jail is a building and not a person or a legal entity subject to suit under § 1983."); *Jones v. Vista Detention Facility*, 2015 WL 2152654 at * 3 (S.D. Cal. May 7, 2015) (same); *cf., Lovelace v. DeKalb Cent. Prob.*, 144 F. App'x 793, 795 (11th Cir. 2005) (county police department not a legal entity subject to suit under § 1983); *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (dismissing claim against sheriff's department because department was not subject to suit under Alabama law).

[5] *See Howard v. Waide*, 534 F.3d 1227, 1244-45 (10th Cir. 2008), and *Johnson*, 385 F.3d at 515-23 (in each case the plaintiff was openly homosexual and made it known to prison officials that his status exposed him to the risk of sexual assault in the unit in which he was confined; both courts applied exhaustion requirements); *see also McCrea v. S.C. Dep't. of Corr.*, 2015 WL 6913740 at * 3 (D.S.C. Nov. 9, 2015) (same basic claim brought by sexual-orientation plaintiff).

"However, failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 867 (11th Cir. 2008) (quotes, alteration and cite omitted). Yet, a district court may *sua sponte* dismiss a prisoner's 42 U.S.C. § 1983 complaint if it shows that he failed to exhaust his administrative remedies. *Anderson v. Donald*, 261 F. App'x 254, 256 (11th Cir. 2008), applied in *Johnson v. McLaughlin*, 2014 WL 7662517 at * 8 (M.D.Ga. Dec. 9, 2014) ("Plaintiff has failed to show that he fully complied with Georgia's three-step grievance procedure as he did not produce evidence that he filed either a formal grievance or an appeal.").

Some courts discuss a second-chance pleading option here:

> While a plaintiffs failure to exhaust administrative remedies is considered an affirmative defense and not a jurisdictional infirmity, *Jones v. Bock*, 549 U.S. 199 (2007), if the lack of exhaustion is apparent from the face of the prisoner's complaint *sua sponte* dismissal prior to service of the complaint is appropriate. *See Corey v. Daniels*, No. 15–6707, 2015 WL 5812918, at *1 (4th Cir. Oct. 6, 2015) ("A district court is permitted to address the issue of exhaustion *sua sponte*, however, and may dismiss the complaint without input from the defendant, if the 'failure to exhaust is apparent from the face of the complaint,' *and* the inmate is provided an opportunity to respond on the exhaustion issue.") (quoting *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir.2005)); *see also Moore v. Bennette*, 517 F.3d 717, 725

(4th Cir.2008); *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655–56 (4th Cir.2006).

*McCrea v. S.C. Dep't of Corr.*, 2015 WL 6913740 at * 3 (D.S.C. Nov. 9, 2015) (emphasis added).

Others say no second-chance amendment is required if the lack of exhaustion is clear from the face of the Complaint. *Byrd v. Stirling*, ___ F. Supp. 3d ___, 2015 WL 7251268 at * 2 (D.S.C. Nov. 5, 2015) ("Nonetheless, a district court may raise the issue of exhaustion of remedies on its own motion, and it may dismiss the complaint *sua sponte* for failure to exhaust (a) where failure to exhaust is apparent from the face of the complaint *or* (b) if the failure is not apparent from the complaint's face, after giving the inmate an opportunity to address the exhaustion issue.") (quotes and cite omitted; emphasis added); *Stephany v. Miles*, 2015 WL 7292772 at * 3 (M.D. Pa. Oct. 15, 2015) (a court has the inherent power to *sua sponte* dismiss an action where failure to exhaust available administrative remedies is abundantly clear from the face of the complaint."). As noted, that fact is clearly demonstrated here, and this Court agrees with the *Byrd* court because Bostic is free to re-plead within his 14-day, Fed. R. Civ. P. 72(b)(2)

7

Objection period to this Report and Recommendation. His case therefore must be dismissed on those grounds alone.

Additionally, Bostic's defamation claim fails as a matter of law. "Defamation, by itself, is a tort actionable under the law of most States, but not a constitutional deprivation." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991). Accordingly, a simple defamation claim against a state official, unaccompanied by the denial of some other legal right or status, is not actionable under § 1983. *Paul v. Davis*, 424 U.S. 693, 711-12 (1976) (injury to reputation alone does not deprive the defamed party of any right safeguarded by the Constitution); *Von Stein v. Brescher*, 904 F.2d 572 (1990) (sheriff's defamatory comments following plaintiff's arrest did not deprive plaintiff of any constitutionally protected interest); *Walker v. Atlanta Police Dep't Public Affairs Unit*, 322 F. App'x. 809, 810 (11th Cir. 2009) ("a claim of being defamed by a police officer is not actionable under 42 U.S.C. § 1983").

Given the sheer frivolity of Bostic's complaint, it must be **DISMISSED WITH PREJUDICE** and a re-pleading option is not warranted. *Dysart v. BankTrust*, 516 F. App'x 861, 865 (11th Cir. 2013) ("[D]istrict court did not err in denying Dysart's request to amend her

complaint because an amendment would have been futile."); *Langlois v. Traveler's Ins. Co.*, 401 F. App'x 425, 426-27 (11th Cir. 2010); *Simmons v. Edmondson*, 225 F. App'x 787, 788-89 (11th Cir. 2007) (district court did not err in dismissing complaint with prejudice without first giving plaintiff leave to amend because no amendment could have overcome the defendants' immunity). This case should also be recorded as a "strike" under 28 U.S.C. § 1915(g).

Meanwhile, it is time for Bostic to pay his filing fee, which is to be collected *in addition* to the $350 filing fee in his two other cases (hence, a total of $1050) -- *Bostic v. Knoche*, CV415-113; *Bostic v. C.N.T.*, CV415-114.[6] His furnished PLRA paperwork reflects $514.17 in average

---

[6] Some courts treat the fee issue differently, and the divergences arise from the way they interpret 28 U.S.C. 1915(b). When a prisoner "brings a civil action or files an appeal" IFP, he "shall be required to pay the full amount of a filing fee." 28 U.S.C. 1915(b)(1). But he does so through an installment plan -- he pays "an initial partial filing fee" of 20% of his average monthly deposits or income (whichever is greater), followed by "monthly payments" of 20 percent of his preceding month's income. 28 U.S.C. 1915(b)(1) and (2).

The court in *Pinson v. Samuels*, 761 F.3d 1 (D.C. Cir. 2014) held that § 1915(b) requires a prisoner who has filed multiple cases and thus incurred multiple filing fees to pay them simultaneously. Thus, multiple-case fees are stacked to be paid, under the 20% rule, at the same time. *Id.* at 7-10. That is the "per case" approach. *Id.* Successfully petitioning for *certiorari* in that case, 2015 WL 241878, *cert. granted sub nom, Bruce v. Samuels*, 135 S. Ct. 2833 (2015), Antoine Bruce argued the "per prisoner" approach. That is, § 1915(b)'s "monthly payments" language refers to all cases an inmate has filed (hence, per prisoner), so he should only have to pay 20% of his monthly income no matter how many case filing fees he may owe. 2015 WL

monthly deposits over the six month period prior to the date of his Prison Account Statement. Doc. 5. He therefore owes a $102.83 initial partial filing fee. *See* 28 U.S.C. § 1915(b) (1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's custodian (or designee) therefore shall remit the $102.83 initial partial filing fee and shall set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.

---

241878 at * 19-22 (per prisoner, rather than per case approach). *Bruce* was orally argued on November 4, 2015.
http://www.supremecourt.gov/oral_arguments/argument_transcripts/14-844_4fci.pdf

Other courts have applied the per prisoner interpretation. *Grenning v. Stout*, ___ F. Supp. 3d ___, 2015 WL 6693118 at *6 (E.D. Wash. Nov. 3, 2015) (applying per-*prisoner*, rather than per-*case* basis interpretation, and expressly adopting the reasoning of *Siluk v. Merwin*, 783 F.3d 421, 426 (3rd Cir. 2015) (per prisoner interpretation)). Although the Eleventh Circuit has not ruled on this precise issue, it has, in requiring multiple prisoners to each pay a filing fee instead of joining their suits together and paying just one, leaned on Congress' interest in preventing abusively frivolous litigation through financial deterrence. *See, e.g., Hubbard v. Haley*, 262 F.3d 1194, 1197 (11th Cir. 2001) (PLRA did not permit group of prisoners to join claims and thereby divide single mandatory filing fee among them, regardless of prisoners' contention that federal joinder rule governed and that their claims arose out of same transaction or occurrence and involved common question of law; PLRA required separate action and payment of full filing fee by each prisoner). This Court will do likewise and apply the per case interpretation to an inmate flinging frivolous lawsuits at this Court. Doing so appropriately underscores PLRA's heartland (deterrence) value.

Also, the Clerk is **DIRECTED** to send this R&R to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from the plaintiff shall be collected by the custodian at his next institution in accordance with the terms of this Order.

**SO REPORTED AND RECOMMENDED** this 21st day of December, 2015.

/s/ M. Smith
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA